Donna Lee H. WILLIAMS, Insurance Commissioner of the State of Delaware as Receiver for National Heritage Life Insurance Company in Liquidation, Petitioner,

v.

INFRA COMMERC ANSTALT, a Liechtenstein Anstalt, South Star Management Company, Inc., a dissolved Florida Corporation, Respondents.

No. 00 CIV. 3575(BDP).

United States District Court, S.D. New York.

Feb. 6, 2001.

Thomas Lindgren, O'Keefe & Lindgren LLP, White Plains, NY, for Petitioner.

David Wittenberg, Hughes Hubbard & Reed LLP, New York City, for Respondents.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Petitioner, the Honorable Donna Lee H. Williams, Commissioner of Insurance for the State of Delaware, in her capacity as the Receiver of National Heritage Life Insurance Company ("NHL"), seeks in

this action to set aside the transfer of an interest in a mortgage on real property located in Texas as a fraudulent conveyance under New York law.

Before this Court are the Receiver's Petition for Delivery of Property (the "Petition"), *see* Fed.R.Civ.P. 69; C.P.L.R. § 5225(b), Petitioner's *ex parte* motion for an order of pre-judgment attachment, *see* Fed.R.Civ.P. 64; C.P.L.R. §§ 6212 and 6201(1), and Infra Commerc Anstalt's cross-motion to dismiss the Petition. *See* Fed.R.Civ.P. 12(b). For the reasons set forth below, Infra Commerc's motion to dismiss is granted, and Petitioner's motion for pre-judgment attachment is denied and the Petition is dismissed.

## BACKGROUND

For purposes of deciding Infra Commerc's cross-motion, the Court is obligated to construe the pleadings in Petitioner's favor, and to accept as true all factual allegations in the Petition. *See Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998); *Serrano v. 900 5th Avenue Corp.*, 4 F.Supp.2d 315, 316 (S.D.N.Y.1998). The following facts relevant to this dispute are construed accordingly.

NHL is a Delaware insurance company in receivership and liquidation pursuant to a Rehabilitation Order entered by the Delaware Chancery Court in May 1994, and a Liquidation and Injunction Order entered in Delaware in December 1995. The Orders authorized the Delaware Commissioner of Insurance, in its capacity as receiver, to prosecute law suits on behalf of NHL for the benefit of NHL's policyholders and creditors.

According to the Petition, during the period relevant to this proceeding, NHL was a creditor of South Star Management Company, Inc. ("South Star")—a defunct Florida company incorporated on August 20, 1993 and dissolved one year later. In 1997, Petitioner commenced a law suit in

the United States District Court for the Middle District of Florida against South Star and various other defendants, in part to recover damages related to the alleged systematic looting of NHL. *Donna Lee H. Williams v. Michael Blutrich, et al.*, No. 97 Civ. 1221. On December 22, 1999, a default judgment was entered against South Star in favor of the Petitioner in the amount of $204 million. To date, South Star has not satisfied the judgment. This action followed.

The Petition alleges that in 1994, South Star held a mortgage on real property located in Texas known as the Sunchase Square Apartments (the "Sunchase Property"). On October 11, 1994, South Star transferred its interest in the mortgage to Infra Commerc, a Liechtenstein company, in exchange for consideration which was not paid directly to South Star but rather to Sholam Weiss, a predicate felon affiliated with South Star and recently convicted on a variety of federal criminal charges arising from the massive looting of NHL. Several months after the October 1994 transfer, Infra Commerc reduced the principal balance of the mortgage, after which the borrower under the mortgage made several principal and interest payments, and ultimately paid the remaining balance to Infra Commerc on December 29, 1995.[1] Upon receipt of the funds, Infra Commerc released the mortgage.

The Petition claims that the October 11, 1994 transfer by South Star to Infra Commerc was a fraudulent conveyance. Specifically, Petitioner alleges that South Star was insolvent at the time of transfer and that fair consideration was not paid in exchange for the property interest. *See* New York Debtor and Creditor Law ("New York DCL") § 273. Moreover, Petitioner claims that the transaction was conducted with actual intent to defraud South Star's creditors. *See* New York DCL § 276. Consequently, as a creditor of South Star at the time of the fraudulent

---

1. According to the Petition, the total principle and interest payments made to Infra Commerc under the Sunchase mortgage were approximately $1.5 million.

transfer, Petitioner contends that it is entitled to satisfy the December 22, 1999 judgment through the recovery of the assets wrongfully conveyed to Infra Commerc.

Before this Court are Petitioner's motion seeking judgment on the pleadings, and Petitioner's *ex parte* motion for an order of pre-judgment attachment of property. Petitioner contends that there are no material issues of fact, and that the Court may make a summary determination in its favor based on the pleadings and papers before it.

Infra Commerc, however, has cross-moved to dismiss the Petition under Fed. R.Civ.P. 12(b)(1), (2) and (6). In particular, Infra Commerc contends that the Petition should be dismissed on the grounds that, *inter alia*, (1) subject matter jurisdiction is lacking; (2) the Court lacks personal jurisdiction over Infra Commerc; and (3) the fraudulent conveyance claims under the New York DCL are time-barred under the applicable statute of limitations.

## DISCUSSION

A district court may grant a motion to dismiss pursuant to Fed.R.Civ.P. 12(b) if 'it appears beyond doubt that the [Petitioner] can prove no set of facts in support of his claim which would entitle him to relief.' *Tarshis v. Riese Organization*, 211 F.3d 30, 35 (2d Cir.2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In making its determination, this Court must construe the Petition's allegations in a light most favorable to the Petitioner. *See Desiderio v.*

**2.** C.P.L.R. § 5225(b) provides in relevant part:

"Property not in possession of judgment debtor. Upon a special proceeding commenced by the judgment creditor, against a person ... who is a transferee of money or other personal property from the judgment debtor, where it is shown that ... the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money ... to the judgment creditor."

**3.** Section 273 of the New York DCL provides:

*National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999).

### I. Fraudulent Conveyance Under New York Law

Petitioner brings this suit pursuant to Fed.R.Civ.P. 69, which permits a judgment creditor to use any execution method consistent with the procedures of the state in which the district court sits. Accordingly, Petitioner seeks to utilize § 5225(b) of the New York Civil Practice Law & Rules, providing for a special "turn over" action by a judgment creditor against a third-party transferee of property from the judgment debtor, so long as the creditor can show that its rights are superior to those of the transferee.[2]

In order to show that Petitioner's rights are superior to those of Infra Commerc, Petitioner relies upon §§ 273 and 276 (but not § 273–a) of the New York DCL—New York's fraudulent conveyance statutes.[3] *See Gelbard v. Esses*, 96 A.D.2d 573, 576, 465 N.Y.S.2 264 (1983) ("In proceedings pursuant to C.P.L.R. § 5225 .... [w]hether such rights are superior is a matter to be determined by applying the fraudulent conveyance provisions of the Debtor and Creditor Law."). Accordingly, Petitioner contends that if it can show that the October 11, 1994 transfer was a fraudulent conveyance under §§ 273 or 276 of the New York DCL, its rights to the property interest would be superior to those of Infra Commerc, entitling it to recover the

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

Section 276 of the New York DCL provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

transferred assets from Infra Commerc.[4]

## II. Statute of Limitations

■ Infra Commerc argues that Petitioner cannot show that its rights are superior because its causes of action under §§ 273 and 276 are time barred. In order to determine whether Infra Commerc is correct, this Court must first determine the applicable statute of limitations.

■ Where, as here, jurisdiction rests upon diversity of citizenship,[5] this Court must apply New York's choice-of-law rules and its statute of limitations. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 108–09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). As a general rule, New York's statute of limitations will apply, even when the injury giving rise to the law suit occurred outside the state. *See Stafford v. International Harvester Co.*, 668 F.2d 142, 147 (2d Cir.1981). One notable exception to this rule, however, is New York's "borrowing" statute. C.P.L.R. § 202.[6]

■ Under this statute, when a nonresident sues based upon a cause of action that accrued outside of New York, "the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued."

*Stuart v. American Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir.1998); C.P.L.R. § 202. Since the parties do not dispute that Petitioner is a nonresident of New York, the applicability of C.P.L.R. § 202 depends upon whether Petitioner's fraudulent conveyance claims "accrued" outside of New York. *Stuart*, 158 F.3d at 627.

■ "For purposes of the New York borrowing statute, a cause of action accrues where the injury is sustained rather than where the defendant committed the wrongful acts." *Gordon & Co. v. Ross*, 63 F.Supp.2d 405, 408 (S.D.N.Y.1999); *see also Global Financial Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529, 715 N.E.2d 482, 693 N.Y.S.2d 479 (1999) ("we have consistently employed the traditional definition of accrual—a cause of action accrues at the time and in the place of the injury—in tort cases involving the interpretation of C.P.L.R. § 202."). Where "an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Id.*

Here, Petitioner is the Insurance Commissioner residing in Delaware, and is acting as receiver for NHL, which is a resident of both Delaware and Florida. Accordingly, the cause of action arose in either Delaware or Florida, and the New York borrowing statute applies. Since

---

**4.** The Court notes that Infra Commerc questions whether C.P.L.R. § 5225(b) is applicable to this action in the first instance, arguing that a transfer of a mortgage is a transfer of real rather than personal property under New York law, and thereby not covered under ¶ 5225(b). The Court need not, and does not, decide that issue here.

**5.** While the parties dispute the basis of subject-matter jurisdiction in this action, the Court does not reach the issue here. Rather, the Court assumes, without deciding, that the basis of jurisdiction for this action is diversity jurisdiction. *See generally Peacock v. Thomas*, 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) (denying ancillary jurisdiction for a judgment enforcement action against a person not already subject to the judgment); *Galuska v. Geoquest, Inc.*, 172 F.3d 53, 1998 WL

879510, *1 (7th Cir. Dec.9, 1998); *Epperson v. Entertainment Express, Inc.*, 2000 WL 630908, No. 99 Civ. 778, *2 (D.Conn. March 31, 2000) (" 'Subsequent suits to enforce judgments must have their own source of federal jurisdiction when they involve new theories of liability, such as fraudulent conveyances.' ") (*quoting Galuska*, 172 F.3d at 53).

**6.** C.P.L.R. § 202 states:

"An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."

New York's statute of limitations for fraudulent conveyance is six years, *see* C.P.L.R. § 213, and Delaware and Florida both have four-year statutes of limitations, *see* Del.Code tit. 6, § 1309; Fla. Stat. Ch. 726.110, the shorter four-year time period applies.[7] Since the Petition was filed on May 11, 2000, more than five years after the transfer of the Sunchase Property to Infra Commerc in October 1994, Petitioner's fraudulent conveyance claims under §§ 273 and 276 of the New York DCL are time barred.[8]

 Petitioner contends, however, that under the "discovery rule," its claims did not begin to run until it knew or should have known of facts giving rise to the claims in question. According to Petitioner, it could not have known of the transfer of the Sunchase Property in 1994, and therefore the statute of limitations has been tolled.

Petitioner's argument is misplaced for two reasons. First, Delaware and Florida recognize the discovery rule for fraudulent conveyance purposes only for claims alleging actual intent to defraud. *Compare* Del.Code tit. 6, § 1309(1) with (2); Fla. Stat. Ch. 726.110(1) with (2). Therefore, Petitioner's constructive fraud claim under § 273 of the New York DCL would not receive the benefit of the discovery rule, since actual intent to defraud is not an element of that statute.

Second, Delaware and Florida only permit one year from the date of discovery of the transfer (or the date on which the transfer could reasonably have been discovered) to bring a suit based on actual fraudulent intent. *See* Del.Code tit. 6, § 1309(1); Fla. Stat. Ch. 726.110(1). In this case, the transfer to Infra Commerc became a matter of public record in Texas no later than November 1994, shortly after Petitioner was appointed receiver of NHL. In any event, Petitioner concedes that it received documents from a title company in 1997 which reflected that Infra Commerc had wrongfully received funds from the payoff of the Sunchase Property. *See* Petitioner's Response in Opposition to Motion to Dismiss at 12. Since it actually possessed information permitting discovery of the transfer in 1997, Petitioner would have had to file the fraudulent conveyance action under § 276 of the New York DCL sometime in 1998. As previously stated, Petitioner failed to do so until May 2000.

Next, Petitioner asserts that its fraudulent conveyance claims, for statute of limitations purposes, did not begin to accrue until the entry of the judgment by the District Court in Florida. As the default judgment was entered in December 1999, Petitioner contends that the statute of limitations should begin to run at that time, and, accordingly, that its claims are well within the applicable time limits set by Delaware or Florida law.

---

7. Both the Delaware and Florida statutes of limitations for fraudulent conveyance are very specific and virtually identical. Under both statutes, a fraudulent conveyance claim based upon actual intent must be brought within four years after the transfer was made, or, if later, within one year after the transfer was or could have been reasonably discovered by the claimant. *See* Del.Code tit. 6, § 1309(1); Fla. Stat. Ch. 726.110(1). Moreover, a fraudulent conveyance claim based upon the transferor's insolvency at the time of the transfer (constructive fraud) must be brought within four years after the transfer was made, regardless of when the fraud was or could have been discovered. *See* Del.Code tit. 6, § 1309(2); Fla. Stat. Ch. 726.110(2).

8. At least one court has noted, in *dicta*, that it had no knowledge of New York's borrowing statute being applied to New York's own statutes, as opposed to New York common law or federal statutes. *Brown v. Austrian Airlines*, 1997 WL 913334, No. 97 Civ. 3798, *6 (E.D.N.Y. Dec. 9, 1997). However, as that court promptly conceded, "there is no authority to support the proposition that the borrowing statute is inapplicable to New York State statutory causes of action," and the borrowing statute itself "appears to cover any action." *Id.* at *7–8. In any event, the court went on to consider the applicability of the borrowing statute to a New York statutory cause of action.

However, a cause of action begins to accrue at the time when "all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court." *Ackerman v. Price Waterhouse*, 84 N.Y.2d 535, 541, 644 N.E.2d 1009, 620 N.Y.S.2d 318 (1994). Since NHL was alleged to be a creditor of South Star in October 1994 (at which time Petitioner had already been appointed receiver), each of the elements under §§ 273 and 276 of the New York DCL existed when the transfer occurred, and Petitioner could have brought its fraudulent conveyance claims from that date forward. Accordingly, the applicable statute of limitations began to run on October 11, 1994—the date of the transfer—and not on the date of judgment. *See Wall Street Assoc. v. Brodsky*, 257 A.D.2d 526, 530, 684 N.Y.S.2d 244 (1999) ("New York law provides that a claim for constructive fraud ... arises at the time the fraud or conveyance occurs."); *Liberty Co. v. E. Boyle*, 272 A.D.2d 380, 381, 708 N.Y.S.2d 122 (2000) (a cause of action "arises at the time the fraudulent conveyance occurs").

Petitioner's contention that a fraudulent conveyance claim does not accrue until the entry date of a judgment is appropriate for claims arising under § 273–a of the New York DCL, not §§ 273 or 276. Section 273–a states,

"Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, *after final judgment for the plaintiff, the defendant fails to satisfy the money judgment.*" (Emphasis added).

Accordingly, a claim arising under § 273–a would not accrue, for statute of limitations purposes, until a judgment had been obtained. *See Duttle v. Bandler & Kass*, 1992 WL 162636, No. 82 Civ. 5084, *2 (S.D.N.Y. Jun. 23, 1992) ("The statute of limitations for § 273–a does not accrue until, at the earliest, the date of the judgment."). As the Receiver asserts no claim under § 273–a, Petitioner's argument in this regard is inapposite since its fraudulent conveyance claims are not predicated on a judgment but on the antecedent transfer. *See also Maio v. Gardino*, 267 A.D.2d 816, 817–18, 700 N.Y.S.2d 509 (1999) (even where judgment creditor brought suit three months after entry of judgment, the action was time barred because of statute of limitations applicable to fraudulent conveyance claims, regardless of "[w]hether [the] action is viewed as one to set aside a fraudulent conveyance or as one to enforce a money judgment." Since the "core relief that plaintiffs seek, regardless of how the pleading is viewed, is to set aside this assignment of mortgage as fraudulent, Supreme Court correctly dismissed the complaint as time barred").

Finally, Petitioner's argument that it is not subject to any state's statute of limitations based on the doctrine of *nullum tempus occurrit regi* (time does not run against the king) is not persuasive. As a general matter, the doctrine of *nullum tempus* typically applies where the government acts as a sovereign and seeks to vindicate public, not private, rights. *Securities and Exchange Commission v. Lorin*, 869 F.Supp. 1117, 1127 (S.D.N.Y.1994) (applies where "government is pursuing a public right or interest"); *see also City of Philadelphia v. Lead Ind. Ass'n, Inc.*, 994 F.2d 112, 118 (3d Cir.1993) ("The rationale of [*nullum tempus*] is that the Commonwealth, as plaintiff, seeks the vindication of public rights and the protection of public property."); *Dole v. Local 427*, 894 F.2d 607, 610 n. 6 (3d Cir.1990) (*nullum tempus* "derives from the great public policy of preserving the public rights, revenues and property from injury and loss, by the negligence of public officers"); *Mayor and Council of Wilmington v. Dukes*, 157 A.2d 789, 794, 52 Del. 318 (1960) (*nullum tempus* applies when a state is "suing in its sovereign capacity").

Here, the Delaware Insurance Commissioner is suing "for the benefit of the Company's policyholders, stockholders and creditors," *see* Rehabilitation Order ¶ 3, to enforce private rights purportedly held by NHL against a third-party transferee of an allegedly fraudulent conveyance. There are no sovereign or governmental rights involved in this particular "turn over" action. The fact that NHL is now in receivership neither changes it into a sovereign entity, nor elevates its rights to public status. Consequently, the change does not affect Infra Commerc's ability to assert the statute of limitations as a defense. *Lorin*, 869 F.Supp. at 1127 ("The doctrine does not apply, however, when the government is functioning merely as a conduit for the enforcement of private rights which could have been enforced by the private parties themselves."); *Lead Ind.*, 994 F.2d at 120 (*nullum tempus* does not apply where the state is not "suing in a governmental capacity ... to enforce an obligation imposed by law") (internal quotations omitted); *Dole*, 894 F.2d at 611 ("The critical issue here ... is whether the Government was acting in its Governmental capacity and asserting its claim in that right") (internal quotations omitted); *Chicago & N.W. Ry. Co. v. Ziebarth*, 245 F. 334, 337 (8th Cir.1917) (because the case was "not brought by the sovereign to protect some right attaching to sovereignty," it cannot claim the benefit of *nullum tempus*); *see also United States v. California*, 507 U.S. 746, 756–59, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993) (where the federal government was entitled to recover on a claim by way of subrogation of a private actor, it was subject to the applicable state's statute of limitations).[9]

## CONCLUSION

For the reasons stated above, Infra Commerc's motion to dismiss is granted, and Petitioner's Motion for the Delivery of Property and its Motion for Attachment

9. Because the Court finds that Petitioner's claims are barred, it does not address the

are denied. The Clerk of the Court is directed to dismiss the Petition.

SO ORDERED.

other arguments set forth in Infra Commerc's motion to dismiss.