Stanley J. KONDRACKY et al.

v.

CRYSTAL RESTORATION, INC. et al.

No. 2000–96–Appeal.

Supreme Court of Rhode Island.

Feb. 8, 2002.

Peter P. D'Amico, Providence.

Joseph E. Rothemich, Coventry.

### ORDER

In this civil action for breach of a contractor's implied warranty of workmanship and habitability of a dwelling house, fraudulent conveyances, and deceptive trade practices, the plaintiffs, Stanley J. Kondracky and Josephine Kondracky (collectively, the plaintiffs), appeal from a judgment in favor of defendants, Abbott

Building Corporation, Inc. (Abbott), and Thomas Marcotte (Marcotte) and Patricia Marcotte (collectively, the Marcottes), following a nonjury trial.

On October 6, 1992, the plaintiffs and defendant Crystal Restoration, Inc. (Crystal) entered into a purchase and sale agreement for the construction of a single family home in Cumberland, Rhode Island for $200,000. Marcotte, the sole stockholder, president and treasurer of Crystal, signed the agreement on behalf of the corporation in his capacity as president.[1] Before the home was completed, the plaintiffs, on May 27, 1993, filed a complaint against Crystal with the Building Contractor's Registration Board (the board) alleging structural defects and building code violations. They also filed a civil action in 1993 in the United States District Court for the District of Rhode Island against Crystal and Marcotte, alleging breach of contract and fraud.[2] On October 15, 1993, after many of the alleged defects were corrected, the plaintiffs signed a release in favor of Crystal and Marcotte in the pending federal case. The release, however, specifically did "not release the releasees [Crystal and Marcotte] from any warranties which may be applicable under Rhode Island law with respect to the sale of new residential homes." On October 15, 1993, the same day that the release was given, Crystal conveyed the property to the plaintiffs by and through its president, Marcotte.

Not long after taking possession of the property, the plaintiffs discovered many previously undiscovered structural defects and building code violations. On March 7, 1994, they filed a second complaint against Crystal and Marcotte with the board.[3] Af-

1. Patricia Marcotte was Crystal's secretary and only other director.

2. Meanwhile, on June 7, 1993, the Marcottes incorporated Abbot Building Corporation,

Inc. Marcotte was listed as its president and treasurer, while Patricia was its secretary.

3. The complaint sounded in breach of a contractor's implied warranty of workmanship and habitability of a dwelling house. It was

ter a hearing, the board ruled in favor of the plaintiffs and ordered "Crystal Restoration, Thomas Marcotte, registration # 2370" to pay $30,000 in damages to the plaintiffs. No appeal was taken from this order and the damages never were paid to the plaintiff. On October 6, 1995, the plaintiffs filed the instant complaint in Superior Court. Meanwhile, Crystal ceased doing business and, on November 28, 1995, its certificate of incorporation was revoked.

In their Second Amended Complaint, the plaintiffs asserted that as a final order, the board's decision should be entered as a judgment in the Superior Court and that Marcotte, Crystal and Abbot, as Crystal's successor corporation, were jointly and severally liable to the plaintiffs for the judgment amount. They also contended that: the Marcottes engaged in a series of fraudulent conveyances to Crystal; all of the defendants violated the Deceptive Trade Practices Act; and Crystal, Abbot, and Marcotte were jointly and severally liable for breach of express and implied warranties of workmanship and habitability of their dwelling house.

After hearing and considering the evidence, the trial justice determined that the board's 1994 decision was against Crystal, as well as against Marcotte in his capacity as president of Crystal. On April 12, 1999, judgment was entered against Crystal and Marcotte, in the amount of $30,000 on the basis of collateral estoppel. With respect to all of the other counts, judgment was entered in favor of the defendants. The plaintiffs timely appealed.

The plaintiffs assert that the trial justice erred in finding that Abbot was not a successor corporation of Crystal. We disagree. To satisfy the criteria for the "mere continuation" theory, a transfer of assets from the old company to the new company must occur. *See H.J. Baker & Bro., Inc. v. Orgonics, Inc.,* 554 A.2d 196, 205 (R.I.1989). There is no evidence that any transfer of assets from Crystal to Abbot ever occurred in this case. The uncontradicted evidence submitted by Marcotte discloses that Crystal was incorporated in 1985, that Abbot was incorporated eight years later on May 28, 1993, as a general construction business, and that none of Crystal's assets ever were transferred to Abbot. Furthermore, both Abbott and Crystal ceased doing business in 1995.

The plaintiffs next contend that the trial justice erred in not finding Marcotte personally liable for Crystal's wrongdoing. However, the record is devoid of any evidence indicating that Marcotte ever acted in an individual capacity in dealing with the plaintiffs; rather, on each occasion, he acted within his scope of authority as the president, and/or representative of Crystal. *See Kenney Mfg. Co. v. Starkweather & Shepley, Inc.,* 643 A.2d 203, 209 (R.I. 1994) (reiterating that "an agent acting on behalf of a disclosed principal is not personally liable to a third party for acts performed within the scope of his authority.")

The plaintiffs additionally aver that the trial justice erred in denying their claim that the Marcottes engaged in a series of fraudulent conveyances to Crystal in violation of G.L.1956 § 6–16–4. We have stated previously that "[u]nder the Uniform Fraudulent Transfer Act, chapter 16 of title 6, a transfer made by a debtor is fraudulent in respect to a creditor if the debtor made the transfer with an actual

filed against "Thomas L. Marcotte," with a company name of "Crystal Restoration Inc.," and a registration number of "2370." It is undisputed that at that time, Marcotte did not have a personal registration number and that the registration number enumerated in the complaint exclusively was in Crystal's name.

intent to hinder, delay, or defraud the creditor." *Supreme Bakery, Inc. v. Bagley,* 742 A.2d 1202, 1204 (R.I.2000). To trigger the statute, a debtor/creditor relationship necessarily must exist at the time the transfer is made. In this case, the alleged fraudulent transfers occurred between 1981 and 1989. Thus, the very last of these transfers took place over three and one-half years before the parties in this case entered into a purchase and sale agreement for the construction of the dwelling that serves as the epicenter of this litigation. Consequently, the plaintiffs' appeal on this issue must fail.

Finally, the plaintiffs maintain that the trial justice erred in finding that Crystal's regulation and oversight by the board exempted the defendants' activities from the provisions of chapter 13.1 of title 6, the Deceptive Trade Practices Act (the act). However, we have stated previously that, from the plain meaning of § 6–13.1–4, "the Legislature clearly exempted from the Act all those activities and businesses which are subject to monitoring by state or federal regulatory bodies or officers." *State v. Piedmont Funding Corp.,* 119 R.I. 695, 699, 382 A.2d 819, 822 (1978). In this case, it is undisputed that Crystal was regulated by the board; consequently, it was exempted from the act. Thus, the trial justice did not err in her ruling on this issue.

For the foregoing reasons, the plaintiffs' appeal is denied and dismissed. The papers in this case are remanded to the Superior Court.