**ROHM AND HAAS COMPANY,**
Plaintiff,

v.

**Daniel J. CAPUANO, Jr., individually, Daniel J. Capuano, Jr., as Trustee of the Daniel J. Capuano, Jr. Property Trust and the Daniel J. Capuano, Jr. Trust, Jack C. Capuano, as Trustee of the Jack Capuano Property Trust and the Jack Capuano Trust, Capuano Associates, Greenfields Limited Partnership, and Sunrise Investments, L.P., Defendants.**

No. 02–521S.

United States District Court,
D. Rhode Island.

Feb. 3, 2004.

George H. Rinaldi, Esq., Little, Bulman, Medeiros & Whitney, P.C., Providence, RI, John M. Armstrong, Esq., Richard A. Barkasy, Esq., Schnader, Harrison, Segal & Lewis, LLP, Cherry Hill, NJ, for plaintiff.

Mortimer C. Newton, Providence, RI, for defendant.

### DECISION AND ORDER

SMITH, District Judge.

Plaintiff Rohm and Haas Company ("Rohm and Haas" or "Plaintiff") is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania. Rohm and Haas initiated this action against the following Defendants: Daniel J. Capuano, Jr. and Jack C. Capuano (the "Capuanos"); the Daniel J. Capuano, Jr. Trust, the Daniel J. Capuano, Jr. Property Trust, the Jack C. Capuano Trust and the Jack C. Capuano Property Trust (the "Trusts"), of which the Capuanos are the trustees; Capuano Associates, a Rhode Island partnership in which Daniel Capuano, Jr. and Jack Capuano each holds a 50% ownership interest; Greenfields, L.P. ("Greenfields"); and Sunrise Investments, L.P. ("Sunrise") (collectively referred to as the "Defendants"). Daniel and Jack Capuano are the general partners of Greenfields, and Jack Capuano is the general partner of Sunrise. In its three-count Complaint, Rohm and Haas alleges that the Defendants violated three separate provisions of the Rhode Island Uniform Fraudulent Transfer Act (the "RIUFTA"

or "Act"), R.I. Gen. Laws § 6–16–1 *et seq.* In Count I of the Complaint, Rohm and Haas alleges that the Defendants violated R.I. Gen. Laws § 6–16–4(a)(1) by engaging in conduct with the actual intent to hinder, delay, or defraud. In Counts II and III of the Complaint, Rohm and Haas alleges that the Defendants violated R.I. Gen. Laws §§ 6–16–4(a)(2) and 6–16–5(a) by conveying property for less than adequate consideration.

Initially, this matter was solely before the Court on the Defendants' Motion to Dismiss Rohm and Haas' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). However, after oral argument on Defendants' Motion to Dismiss, the Defendants moved for summary judgment with respect to Count I of the Plaintiff's Complaint.[1] For the reasons that follow, Defendants' Motion to Dismiss is granted in part and denied in part.

I. *Background*

In 1977, the Capuanos, owners of a landfill in Cranston, Rhode Island, entered into an arrangement with Warren and Selina Picillo to dispose of waste at the Picillos' pig farm in Coventry, Rhode Island (the "Picillo Site"). Complaint ¶¶ 9–11. Unfortunately for all, things did not go well with this venture. When the ground caught fire in 1977, Rhode Island environmental authorities discovered the release of hazardous chemical waste on the Picillos' property. Complaint ¶¶ 12–13. Pursuant to Section 105 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9605, the United States Environmental Protection Agency ("EPA") designated the Picillo Site for cleanup and placed it on the National Priorities List. Complaint ¶ 14.

On April 20, 1995, Rohm and Haas filed an action in the U.S. District Court for the District of New Jersey against several responsible parties, including the Capuanos, seeking contribution for the amount that it paid toward the groundwater pollution cleanup at the Picillo Site. Complaint ¶ 24. On October 13, 1998, the Capuanos entered into a consent decree with the EPA partially to resolve its liability for soil pollution at the Picillo Site. *Id.* On September 15, 1999, Rohm and Haas' claims against the Capuanos were transferred to the U.S. District Court for the District of Rhode Island. On July 31, 2003, U.S. District Judge Mary M. Lisi of this District rendered a decision in the underlying CERCLA action. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, Judge Lisi found the Capuanos, along with their former company, United Sanitation, Inc., jointly and severally liable to the Plaintiff in the amount of $2,651,838. This action concerns Rohm and Haas' efforts to reap the harvest of that judgment.

Shortly before the Capuanos were notified of their potential liability relating to the Picillo Site, Rohm and Haas asserts that the Defendants, including the Capuanos, completed several transactions "designed to impede and defraud their creditors." Complaint ¶ 27. In its Complaint, Rohm and Haas alleges that the Defendants engaged in the following transactions:

(a) On March 23, 1993, the Capuanos formed the Jack Capuano Property Trust. Jack is the sole Trustee of the Jack Capuano Property Trust. The beneficiaries of the trust are Jack's wife and his children;

(b) On March 23, 1993, the Capuanos formed the Daniel Capuaono [sic],

---

1. The Court will reserve judgment on Defendants' Motion for Summary Judgment. A separate Order will follow this Decision that will indicate when oral argument is scheduled on the Motion for Summary Judgment.

Jr. Property Trust. Daniel is the sole Trustee of the Daniel Capuano, Jr. Property Trust. The beneficiaries of the trust are Daniel's children;

(c) On May 14, 1993, the Capuanos formed Greenfields. The Capuanos are general partners of Greenfields, each with an ownership interest of 0.5 percent (0.5%). The Jack Capuano Property Trust and the Daniel Capuano, Jr. Property Trust are the limited partners of Greenfields, each holding a 49.5 percent (49.5%) ownership interest. The trusts did not pay any consideration for their ownership interests in Greenfields;

(d) On or about July 1, 1993, Capuano Associates transferred valuable assets, including a waste transfer station in Cranston, Rhode Island for less than fair consideration. In 1993, Greenfields entered into a 30–year lease for the transfer station. The rents collected under the lease exceed $10 million;

(e) On October 15, 1993, the Capuanos formed the Jack Capuano Trust. Jack is the sole Trustee of the Jack Capuano Trust. The beneficiaries of the Jack Capuano Trust are Jack's children. Jack transferred his ownership interest in Olympic Compactor Rentals II, Inc. and Olympic Compactor Rentals III, Inc. to the Jack Capuano Trust without consideration;

(f) On October 15, 1993, the Capuanos formed the Daniel J. Capuano, Jr. Trust. Daniel is the sole Trustee of the Daniel J. Capuano, Jr. Trust. The beneficiaries of the Daniel J. Capuano, Jr. Trust are Daniel's children. Daniel transferred his ownership interest in Olympic Compactor Rentals II, Inc. and Olympic Compactor Rentals III, Inc. to the Daniel

J. Capuano, Jr. Trust without consideration;

(g) In an effort to put the funds beyond the reach of his creditors, from August 27 to September 22, 1993, Jack used $1.4 million of his personal funds to purchase annuity contracts; and

(h) On July 1, 1993, Jack formed Sunrise. Jack is the general partner of Sunrise and he has a 1 percent (1%) ownership interest in the partnership. Jack's children are the limited partners. Sunrise is the holder of a blanket $800,000 mortgage on real property owned by Jack. No payments are being made on the mortgage, but no action has been taken to foreclose.

Complaint ¶ 28. The Plaintiff contends that these actions violated the RIUFTA.

In their Motion to Dismiss, the Defendants argue that the Plaintiff's Complaint should be dismissed with respect to Capuano Associates, Greenfields, and Sunrise because no debtor/creditor relationship exists between those parties and the Plaintiff. The Defendants further argue that Counts II and III should be dismissed as to all of the Defendants on statute of limitations grounds.

## II. *Analysis*

### A. *Standard of Review*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether the Complaint states any claim upon which relief could be granted. *See* Fed.R.Civ.P. 12(b)(6). In so doing, the Court accepts all well-pleaded factual assertions as true and draws all reasonable inferences from those assertions in the Plaintiff's favor. *See Aybar v. Crispin–Reyes*, 118 F.3d 10, 13 (1st Cir.1997). A plaintiff is "required to set forth factual

allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988).

## B. *Rohm and Haas' Debtor/Creditor Relationship with Capuano Associates, Greenfields, and Sunrise*

■ The RIUFTA requires that a debtor/creditor[2] relationship exist (or have existed) at the time of the alleged transfer.[3] *See Kondracky v. Crystal Restoration, Inc.*, 791 A.2d 482, 484 (R.I.2002). In this case, the alleged fraudulent transfers occurred beginning in March 1993. Thus, in order for the RIUFTA to apply, a debtor/creditor relationship must have existed between Rohm and Haas and each of the Defendants as of March 1993.

### 1. *Capuano Associates*

■ The Defendants argue that Rohm and Haas does not now have a claim against Capuano Associates, let alone as of 1993, and therefore cannot be a creditor of Capuano Associates under the RIUFTA. The Defendants contend that the Complaint does not allege any facts that might be interpreted as creating a claim against Capuano Associates.

Rohm and Haas concedes that it did not sue Capuano Associates because it was a debtor, but did so instead because it was a participant in the fraudulent transfers. *See* Mem. in Opp. to Motion to Dismiss at 4. Specifically, Rohm and Haas alleges in its Complaint that Capuano Associates

(acting through the Capuanos) conveyed a waste transfer station to Greenfields (99% of which is owned by the Trusts) for less than fair consideration. Rohm and Haas is interested in this conveyance because prior to the conveyance the entire value of the transfer station was potentially subject to execution by the Capuanos' creditors, while following the conveyance only one percent of its value is reachable.

Rohm and Haas cites to *Firstar Bank, N.A. v. Faul*, No. 00-C-4061, 2001 WL 1636430 (N.D.Ill. Dec. 20, 2001), in support of its argument that all participants in a fraudulent conveyance are jointly and severally liable. In *Firstar*, the plaintiff bank sued the defendant car dealership, as well as the dealership's president, alleging that the president sold the dealership's assets with the intent of avoiding payments to Firstar that were owed under two financing agreements. Faul, the president, moved to dismiss the fraudulent conveyance claims brought against him because he never owed anything to Firstar, and therefore he was not personally liable to the bank on any claim. Thus, Faul argued that he could not be a debtor under the Illinois version of the Uniform Fraudulent Transfer Act ("UFTA"). The district court disagreed, however, and held that any party who participates in a fraudulent conveyance can be liable. The court reasoned that while the UFTA does not explicitly hold participants in a fraudulent conveyance liable, Illinois' common law "permits a cause of action for fraud against any party who participates in a

---

2. Under the RIUFTA, a "creditor" is defined as "a person who has a claim," R.I. Gen. Laws § 6-16-1(4), and a "debtor" is defined as one "who is liable on a claim." R.I. Gen. Laws § 6-16-1(6). The Act defines "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

secured, or unsecured." R.I. Gen. Laws § 6-16-1(3).

3. The Act defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." R.I. Gen. Laws § 6-16-1(12).

fraud ... and we see no reason not to extend this rule to fraudulent conveyances." *Id.* at *6 (internal citation omitted).

While the logic employed by the court in *Firstar* is appealing, this Court declines to follow *Firstar* by extending the reach of the RIUFTA beyond that already established by the General Assembly when it adopted the UFTA. The Rhode Island Supreme Court has explicitly held that a creditor can only proceed under the Act against an entity that is liable to it on a claim. *Kondracky*, 791 A.2d at 484. Moreover, most courts have been reluctant to extend the reach of fraudulent conveyance actions so as to include parties that are only participants in a fraudulent transfer. *See e.g., Lowell Staats Mining Co., Inc. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1276 n. 1 (10th Cir.1989) (" '[C]ourts have generally held as to fraudulent conveyances that a person who assists another to procure one, is not liable in tort to the insolvent's creditors.' ") (internal citation omitted); *Mack v. Newton*, 737 F.2d 1343, 1361 (5th Cir.1984) (holding that Texas law, like the Bankruptcy Act, does not allow fraudulent transfer actions against one who is not, at least indirectly, a transferee or recipient of the fraudulently transferred property); *Thompson Kernaghan & Co. v. Global Intellicom, Inc.*, No. 99 CIV. 3005(DLC), 1999 WL 717250 *2 (S.D.N.Y. Sept. 14, 1999) (holding that "a fraudulent conveyance claim may not be maintained against 'parties who ... were neither transferees of the assets nor beneficiaries of the conveyance' " (internal citation omitted)); *see generally* Howard J. Steinberg, *Liability of Participants in Fraudulent Transfers*, 2 Bankr.Litig. § 14.9 (Dec.2003) (noting that courts have been hesitant to develop theories of recovery against those who assist in making fraudulent transfers). Therefore, this Court finds that Capuano Associates cannot be sued under the RIUFTA as a participant in the alleged fraudulent transfers, and the Defendants' Motion to Dismiss as to it is granted.

### 2. *Greenfields*

As a transferee of assets from the Capuanos, Greenfields is properly named as a party to this action. *See* R.I. Gen. Laws §§ 6–16–7, 6–16–8. Therefore, the Defendants' Motion to Dismiss Rohm and Haas' Complaint as to Greenfields is denied.

### 3. *Sunrise*

The Defendants also contend that the Complaint fails to state a claim against Sunrise. Specifically, the Defendants contend that the Plaintiff failed to allege in the Complaint that it has, or ever has had, a claim against Sunrise. Accordingly, the only other way that Sunrise could properly be made a party would be as a transferee of an "asset." *See* R.I. Gen. Laws §§ 6–16–7, 6–16–8.

Under the Act, the term "asset" is defined broadly, with certain limited exceptions. *See* R.I. Gen. Laws § 6–16–1(2). Section 6–16–1(2)(iii) provides that the term "asset" does not include "[a]n interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant." In its Memorandum in Support of its Motion to Dismiss, Sunrise represents to the Court that its $800,000 mortgage is with respect to property owned by Jack Capuano, and his wife Elaine Capuano, as tenants by the entirety. *See* Aff. of J. Capuano ¶ 2. Therefore, pursuant to § 6–16–1(12)(III), Sunrise contends that the property in which Rohm and Haas asserts an interest is not an "asset" under the Act.

While Rohm and Haas' efforts to reach the property owned by Jack and Elaine Capuano may eventually prove futile, this Court finds that such a determination

would be premature at this stage of the litigation. Although persuasive, Capuano's affidavit is by no means conclusive evidence of the ownership of the property subject to Sunrise's mortgage. Rohm and Haas is entitled to further discovery to determine whether the property is an "asset" as defined by the Act. The Motion to Dismiss as to Sunrise, therefore, is denied.

### C. *Fraudulent Transfer Claims— Counts II and III of the Complaint*

■ The RIUFTA provides creditors with a means of relief against debtors who make fraudulent asset transfers. The Act provides, in pertinent part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction[.]

R.I. Gen. Laws § 6–16–4(a). The RIUFTA also makes a transfer fraudulent if "the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and ... the debtor became insolvent as a result...." R.I. Gen. Laws § 6–16–5(a).

The Defendants contend that Count II (brought under R.I. Gen. Laws § 6–16–4(a)(2)) and Count III (brought under R.I. Gen. Laws § 6–16–5(a)) of the Plaintiff's Complaint must be dismissed because they are timebarred by the Act's statute of limitations. Section 6–16–9(2) provides the relevant statute of limitations:

A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:

.    .    .    .    .

(2) Under § 6–16–4(a)(2) or 6–16–5(a), within four (4) years after the transfer was made or the obligation was incurred[.]

R.I. Gen. Laws § 6–16–9(2). In this case, Rohm and Haas complains of transfers that occurred in 1993. *See* Complaint ¶¶ 27–28. Because Rohm and Haas filed its Complaint on December 12, 2002—more than nine years after the alleged fraudulent transfers began—the Defendants argue that Counts II and III are time-barred.

Rohm and Haas, however, contends that the causes of action asserted in Counts II and III are saved by the common law discovery rule. Rhode Island recognizes a common law discovery rule, but has limited its application to certain causes of action. *See Arnold v. R.J. Reynolds Tobacco Co.,* 956 F.Supp. 110, 114 (D.R.I.1997) (noting, in a lengthy discussion of the discovery rule's application in Rhode Island, that "further extension of the discovery rule 'would subvert the entire purpose of a statute of limitations'" (internal citation omitted)); *see also Benner v. J.H. Lynch & Sons, Inc.,* 641 A.2d 332 (R.I.1994) (applying the discovery rule to wrongful death actions); *Anthony v. Abbott Labs.,* 490 A.2d 43 (R.I.1985) (applying the discovery rule to actions against drug manufacturers under strict products liability); *Lee v. Morin,* 469 A.2d 358 (R.I.1983) (applying the discovery rule to suits alleging damage to real property). Consequently, this Court is reluctant to extend Rhode Island's com-

mon law discovery rule absent compelling justification.

The Defendants also suggest that Rohm and Haas' attempt to apply the common law discovery rule is inappropriate because the RIUFTA contains its own discovery rule. Indeed, section 6–16–9(1) contains a discovery rule, which provides that causes of action brought under § 6–16–4(a)(1) must be brought within four years of the transfer, or "within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." This statutorily provided discovery rule, however, does not apply to actions brought under §§ 6–16–4(a)(2) or 6–16–5(a). The Defendants therefore contend that as to specific causes of action where the General Assembly has chosen not to provide a statutory discovery rule, this Court should not import the common law discovery rule as to those causes of action. This Court agrees. In *Williams v. Infra Commerc Anstalt*, 131 F.Supp.2d 451 (S.D.N.Y.2001), the petitioner sought to set aside certain transfers as fraudulent in violation of Delaware's and Florida's fraudulent conveyance statutes.[4] Although time-barred by the statutes, the petitioner argued that the discovery rule had tolled the limitations periods. The court disagreed, however, and held that

> Petitioner's argument is misplaced.... Delaware and Florida recognize the discovery rule for fraudulent conveyance purposes *only* for claims alleging actual intent to defraud. Therefore, Petitioner's constructive fraud claim ... would not receive the benefit of the discovery rule, since actual intent to defraud is not an element of that statute.

131 F.Supp.2d at 456 (emphasis added). Like the court in *Williams*, this Court will not read the common law discovery rule

into provisions of the RIUFTA when the General Assembly, well aware of what it was doing, specifically chose not to apply a discovery rule to causes of action where no actual intent to hinder or defraud is required. Accordingly, Counts II and III of Rohm and Haas' Complaint are dismissed pursuant to Rule 12(b)(6).

III. *Conclusion*

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Defendants' Motion to Dismiss Rohm and Haas' Complaint as to Capuano Associates is GRANTED;

2. Defendants' Motion to Dismiss Rohm and Haas' Complaint as to Sunrise Investments, L.P. and Greenfields, L.P. is DENIED; and

3. Defendants' Motion to Dismiss Counts II and III of Rohm and Haas' Complaint as to all Defendants is GRANTED.

IT IS SO ORDERED.

---

**4.** These statutes also appear to be modeled on the UFTA, and are therefore nearly identical to the RIUFTA.